UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAHSHEEDA COVINGTON,

                              Plaintiff,

        v.

THE ESTÉE LAUDER COMPANIES INC.
and M.A.C. COSMETICS INC.,

                              Defendants.

Case No. 24-cv-8309

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Rahsheeda Covington ("Plaintiff"), by her undersigned attorneys, Reavis Page Jump LLP, for her Complaint against Defendants The Estée Lauder Companies Inc. ("ELC") and M.A.C. Cosmetics Inc. ("MAC") (together, the "Defendants"), alleges as follows:

## NATURE OF THE CASE

1.    Plaintiff brings this action against Defendants – her former employers ELC and MAC (with references to "ELC" hereinafter including MAC as to all employment-related allegations) – for unlawful discrimination, hostile work environment, and wrongful termination on the basis of her race, color, disability, regarded-as disability, and for related unlawful retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, as amended, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Plaintiff also asserts a claim against Defendants for violation of New York's Whistleblower Law, N.Y. Lab. Law § 740.

2.      With respect to Title VII, Plaintiff notes that, by Letter of Determination dated May 16, 2023, the U.S. Equal Employment Opportunity Commission ("EEOC") stated that (i) its investigation "reveals that there is probable cause that Respondent [*i.e.*, as defined in that Letter of Determination, 'Estee Lauder Companies, Inc. (MAC Cosmetics Inc.)'] discriminat[ed] against the Charging Party [*i.e.*, Plaintiff] . . . because of race . . . , in violation of Title VII," and (ii) it had determined that "there is reasonable cause to believe that Respondent discriminated, terminated, and retaliated against Charging Party and a class of similarly situated [employees] on account of race and color."

3.      Plaintiff, an African American female, worked for ELC for nine years, the last eight of which were at its MAC store in Harlem, located at 202 West 125th Street, in New York City (the "Harlem MAC store").  Plaintiff quickly worked her way up from a part-time employee role to the full-time, supervisory position of "Third Key."  In the retail context, this position refers to an employee who is responsible for opening and closing a store location, and who assists and collaborates with a store manager and assistant manager in overseeing store operations, customer service, store maintenance and presentation, products, and staff support.

4.      Plaintiff was an award-winning, top-selling employee, with an established clientele who frequently left her glowing reviews on Yelp ("amazing"; a "wonderful" teacher; an "accommodating" MAC representative who "made it all worth it").  Indeed, before Plaintiff went on medical/disability leave in January 2020 as the result of a violent assault against her at the Harlem MAC store, her place of employment with ELC, she had been further promoted to Temporary Assistant Manager, *i.e.*, second in charge of the store, and was in training to be further elevated and to take over the permanent Assistant Manager position.

5.      However, despite all her professional achievements, Plaintiff – as well as her co-

workers at the Harlem MAC store, who were predominantly also Black and all of whom were people of color ("POC") with only one exception – was subjected to persistently unsafe and violent working conditions due to ELC's neglect and failure to provide adequate security at the Harlem MAC store.

6.      Throughout her tenure, Plaintiff was repeatedly threatened and physically attacked by customers at the Harlem MAC store.  Plaintiff raised these safety issues on multiple occasions. Yet ELC continuously failed to address the violence and dangerous conditions there.

7.      Plaintiff even discussed her safety and store-security concerns directly with the Senior Vice President of ELC Security, Lewis Rice ("Rice").  But Rice informed Plaintiff that he could not do anything, telling Plaintiff that that ELC corporate officers had decided, despite Plaintiff's pleas for increased safety, that the effort involved in changing security practices at the Harlem Mac store would be "too much work for just one store."

8.      ELC's failure to ensure the safety of its predominantly Black and almost exclusively POC workforce at the Harlem MAC store is a clear violation of its duty to protect employees from harm, and stands in stark contrast to the protections and conditions provided to employees at ELC and MAC stores staffed predominantly by white workers.

9.      After enduring years of workplace violence and hazardous conditions, Plaintiff was, as mentioned above, brutally attacked by a customer in the Harlem MAC store on January 23, 2020, resulting in hospitalization and long-term trauma.

10.      Diagnosed with resulting anxiety and Post-Traumatic Stress Disorder ("PTSD"), Plaintiff took medical/disability leave to recover from this assault.  Yet, despite Plaintiff being later available and ready to return to work, when the Harlem MAC store reopened following its COVID-19 closure, Plaintiff was the only employee at the Harlem MAC store who was not

reinstated, despite her years of service and excellent performance.

11.    ELC's termination of Plaintiff – under the guise of "restructuring" – was pretextual, as it was motivated in reality by ELC's perception of Plaintiff as "damaged goods," *i.e.*, a disabled and traumatized victim of workplace violence, susceptible to further psychological and physical harm due to the ongoing dangerous and unremedied work conditions at the Harlem MAC store.

12.    Rather than address the dangerous working conditions at the Harlem MAC store, ELC chose to punish Plaintiff for her disability (and perceived disability) and for her whistleblowing about the continual workplace violence, threats of violence, and lack of safety that she and her predominantly Black and, with only one exception, entirely POC colleagues were being subjected to at the Harlem MAC store.

13.    Defendants allowed Plaintiff to be subjected to repeated violence and trauma for eight years due to her race and color, and then callously discarded her after she was understandably traumatized and disabled following the January 23, 2020 attack by a customer.

14.    Further, Defendants demonstrated their belief that they could get away with subjecting the Harlem MAC store staff to repeated violence and harassment, because those employees were predominantly Black and, with one exception, entirely POC, thereby demonstrating a clear disregard for those employees' safety, well-being, workplace dignity, and legal rights, in contrast to Defendants' treatment of white employees at other ELC/MAC stores.

15.    Defendants' actions constitute clear violations of city, state, and federal anti-discrimination laws, as well as of New York's whistleblower protections.

16.    Plaintiff seeks compensation for the financial, emotional, physical, and psychological harm caused by Defendants' discriminatory and retaliatory conduct, as well as punitive damages for the willful and malicious nature of Defendants' actions.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, in that it involves a federal question under 42 U.S.C. § 2000e *et seq*. and 29 U.S.C. § 12101 *et seq*.  This Court has supplemental jurisdiction over Plaintiff's city and state law claims under 28 U.S.C. § 1367(a) because such claims arise from the same or closely related conduct of Defendants.

18.     This Court has personal jurisdiction over Defendants because: (i) Defendants transact business within the State of New York and derive substantial revenue from interstate commerce; (ii) Defendants intentionally acted in such a way as to cause injury to Plaintiff in the State of New York; and (iii) Defendants expect or should have expected their actions to have consequences in the State of New York.

19.     Venue is proper in this district by virtue of 42 U.S.C § 2000e-5(f)(3), because this is the judicial district where the unlawful employment practices are alleged to have been committed, and by virtue of 28 U.S.C. § 1391(b) and (c), because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

20.     Plaintiff filed a Charge of Discrimination with the EEOC on May 17, 2021, upon which this Complaint is based.

21.     As noted above, the EEOC has specifically determined that "there is reasonable cause to believe that ['Estee Lauder Companies, Inc. (MAC Cosmetics Inc.)'] discriminated, terminated, and retaliated against [Plaintiff] and a class of similarly situated [employees] on account of race and color," in violation of Title VII.

22.     Plaintiff received a Notice of Right to Sue from the EEOC on June 18, 2024.  That

notice also informed Plaintiff of a "Conciliation Failure of Charge," indicating that "[t]he EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you."

23.    Given a tolling agreement entered into among the parties, this action is being commenced within ninety (90) days of the receipt of said Notice of Right to Sue.

## PARTIES

24.    Plaintiff Rahsheeda Covington is an individual who resides in the State of New York.  Plaintiff was an "employee" of ELC and MAC from 2011 to 2020 and is entitled to protection by relevant federal, state, and city laws referenced herein.

25.    Upon information and belief, Defendant The Estée Lauder Companies Inc. is a Delaware corporation with its principal place of business located at 767 Fifth Avenue, New York, NY.  ELC manufactures, markets, and sells skin care, makeup, fragrance, and hair care products.

26.    Upon information and belief, Defendant M.A.C. Cosmetics Inc. is a Delaware corporation with its principal place of business located at 767 Fifth Avenue, New York, NY.  MAC, which is part of ELC and one of its brands, is a makeup and cosmetics brand.  Employees of MAC received The Estée Lauder Companies Inc.'s "Code of Conduct," which lists ELC/MAC's discrimination, harassment, and retaliation policies and instructions, and which recognizes such employees as employees "at our Company [*i.e.*, The Estée Lauder Companies Inc.]."

## FACTUAL ALLEGATIONS

### I.    PLAINTIFF'S EMPLOYMENT AT ELC

27.    In her nine years working for ELC, Plaintiff was an award-winning, top-selling employee with an established clientele who frequently left her glowing reviews on Yelp

("amazing"; a "wonderful" teacher; an "accommodating" MAC representative who "made it all worth it").

28.     Over the course of her career with ELC, Plaintiff received several promotions, working herself up from a part-time employee role to the full-time, supervisory position of "Third Key" at the Harlem MAC store.

29.     Before Plaintiff went on a medical/disability leave of absence starting in January 2020, after having been assaulted in the Harlem MAC store, she had been further promoted to Temporary Assistant Manager, *i.e.*, second-in-charge of the Harlem MAC store, and was in training for further elevation and to take over the permanent Assistant Manager position.

30.     Over the course of her employment at ELC, Plaintiff also had several temporary assignments at other ELC stores in New York City, and also visited in connection with work at least five other ELC stores in New York City.

II.    **PLAINTIFF AND THE HARLEM MAC STORE'S OTHER BLACK AND POC EMPLOYEES WERE SUBJECTED TO A VIOLENT AND DANGEROUS WORK ENVIRONMENT**

31.     Throughout Plaintiff's employment with ELC, the Harlem MAC store had, at varying times, between 12 and 25 permanent employees, who were predominantly Black and all of whom, with only one exception, were POC.

32.     Upon information and belief, the Harlem MAC store was the only MAC store in Manhattan staffed predominantly by Black and otherwise all, with one exception, POC employees.

33.     ELC failed to provide a safe work environment for Plaintiff and the other Harlem MAC store employees because of her and their race and color.

34.     ELC was on notice that staff members at the Harlem MAC store and, in particular, Plaintiff, were regularly attacked or threatened in the store by customers.  But ELC failed to take

the necessary corrective actions to protect its Black and POC staff.

35.     In 2018, an individual known by staff and security as someone who regularly stole from the Harlem MAC store approached Plaintiff.  He pointed his finger at her as if he had a gun, called her a "bitch," and threatened to shoot her along with everyone else in the store.

36.     On at least two other occasions during her employment, Plaintiff was threatened by Harlem MAC store security guards, one of whom called her on the phone and threatened to come to the store and "fuck [her] up."  Plaintiff filed incident reports concerning those threats.

37.     It was commonplace for employees at the Harlem MAC store to encounter dangerous working conditions because of ELC's inadequate security practices.

38.     Employees at the Harlem MAC store were also forced to put up with other hazards. For example, the back of the store was an unfinished construction zone, abandoned in the middle of renovations and never completed or cleaned up, which led to problems with rats as well as problems with bedbugs, and the need to temporarily close the store.

39.     In her role as Third Key, Plaintiff completed numerous incident reports on behalf of employees who had been assaulted in the Harlem MAC store.  She had even gone so far as to intervene to prevent a violent encounter in the store after a customer physically threatened a co-worker, screaming "I'm going to cut your face, African style."

40.     The Harlem MAC store's security guards, bound by a strict "hands off" policy, failed to protect the staff.  Indeed, the store's security guards were so ineffective that they were sometimes mocked by customers.

41.     ELC was indifferent to the alarming frequency of violent incidents at the Harlem MAC store and the repeated incident reports filed by Plaintiff on behalf of store employees, and ELC failed to address the Harlem MAC store's dangerous working conditions.

42.     The Harlem MAC store's Business Manager, Alonzo Alston ("Alston"), told Plaintiff that, despite her concerns, ELC corporate had taken the position that it would be simply "too much work" to change security practices for "just one store."

43.     In or around the summer of 2019, after an incident when a Harlem MAC store customer violently pulled her hair, Plaintiff met with Lewis Rice, the SVP of ELC Security, to discuss the Harlem MAC store's dangerous working conditions and inadequate security practices. The meeting proved futile.  Rice specifically confirmed to Plaintiff what Alston had told Plaintiff – namely, that ELC corporate had decided that changing security practices for the Harlem MAC store would be "too much work for just one store."  And, after her meeting with Rice, and notwithstanding Plaintiff's plea to him for added store security and protections, ELC continued to fail to take any measures to make the store safe for its Black and POC employees

44.     Upon information and belief, ELC provided a safe working environment for its New York City stores where the staff was predominantly white; and those employees, unlike Plaintiff and her POC co-workers at the Harlem MAC store, worked without fear of being attacked or endangered.

45.     Despite all of Plaintiff's voiced security concerns, ELC never offered Plaintiff the opportunity to relocate to a different, safer store or position in a corporate office.

III.    **THE JANUARY 2020 ASSAULT ON PLAINTIFF AT THE HARLEM MAC STORE**

46.     On or around January 23, 2020, Plaintiff was assaulted by a customer at the Harlem MAC store.  A woman appeared in the store without an appointment and, apparently unhappy with her makeup, refused to leave when the store closed.  The woman then confronted Plaintiff by pouring water on her and throwing a large water bottle at her head.

47.     Plaintiff was forced to call the police twice, once directly after the assault and again

when the woman reappeared at the store with a male companion displaying gang signs.  In all, Plaintiff filed two police reports.

48.    Plaintiff was hospitalized as a result of the attack.

49.    After her discharge from the hospital, Plaintiff remained deeply traumatized from the assault.  She went on disability leave and filed for Worker's Compensation benefits.  The Worker's Compensation Board graded Plaintiff as having a Level 2 disability and approved her application for benefits, which paid her $160 per week.  Defendants were made aware of Plaintiff's disability.

50.    Before working at the Harlem MAC store, Plaintiff did not suffer anxiety or other disorder of any kind.

51.    As a result of the violence and trauma inflicted by the customer's attack on Plaintiff at the Harlem MAC store, Plaintiff went into treatment with a psychotherapist and was diagnosed with anxiety and PTSD.

52.    Plaintiff suffered many indicia of the diagnosed anxiety and PTSD.  For example, during the months of January through March 2020, Plaintiff never left her home except to go to therapy appointments.

53.    Since the January 2020 assault, Plaintiff continues to have limited interactions with friends and family members due to her anxiety and PTSD.

54.    Plaintiff's psychological conditions constitute a disability under the ADA.

55.    ELC also regarded Plaintiff as having a disability, including even when she was ready and prepared to return to work.

56.    By failing to provide adequate security or safe working conditions for Plaintiff and the other Black and POC employees at the Harlem MAC store, in contrast to the security and safe

working conditions provided to employees at stores staffed predominantly by white employees, ELC committed unlawful disparate treatment against Plaintiff and the other Black and POC employees at the Harlem MAC store on the basis of race and color.

**IV.** **BECAUSE OF HER DISABILITY AND REGARDED-AS DISABILITY, PLAINTIFF WAS THE ONLY EMPLOYEE NOT REINSTATED WITH THE RE-OPENING OF THE HARLEM MAC STORE**

57.     In or about April 2020, ELC temporarily closed the Harlem MAC store because of the COVID-19 pandemic.

58.     Plaintiff and other Harlem MAC store employees were furloughed as of the week of April 26, 2020.

59.     When the Harlem MAC store re-opened in mid-July 2020, Plaintiff fully expected to return to work at the store and was prepared to do so.

60.     Instead, she received an email from Regional Manager Jessica Gonzalez ("Gonzalez") requesting a private telephonic meeting with her and Regional HR Manager Charmaine Bigby ("Bigby").  During that meeting, Gonzalez informed Plaintiff that, although "we take the safety of our staff very seriously," there would no longer be a position available for her, and that effective August 15, 2020, her employment was terminated.

61.     Not receiving any explanation for her termination, Plaintiff understandably asked, "I am being let go because I was attacked?"  Neither Gonzalez nor Bigby responded with an explanation for Plaintiff's discharge or the selection of Plaintiff for discharge.  But in a subsequent email, Gonzalez wrote that, due to a restructuring of the brand, ELC did "not have a role for [her] in [the company's] new structure."   In a subsequent conversation, Gonzalez added that Plaintiff could reapply for her position in December 2020.

62.     Given Plaintiff's status as a nine-year employee of ELC with a stellar work record,

whose only "flaws" were that she took time off to recover from yet one more customer assault and that she had reported unsafe working conditions, ELC's purported reason for Plaintiff's termination was pretextual.

63.     The real reasons for Plaintiff not being permitted to resume employment after the COVID-19 furlough or to be re-hired shortly thereafter were that ELC viewed Plaintiff as damaged goods – that is, a disabled, trauma-stricken victim of workplace violence, vulnerable to further psychological and physical injury working in the Harlem MAC store's unremedied, dangerous work environment – and that ELC was retaliating against Plaintiff for her having raised her concerns.

64.     Subsequent events made ELC's decision to fire Plaintiff that much more suspect. In September 2020, mere weeks after Plaintiff's termination, the Harlem MAC store's Assistant Manager quit.  And although Plaintiff had been in training for that very position, ELC instead promoted the Third Key supervisor (first name Lizette) who had previously filled in for her.

65.     With the Third Key job now open, Alston (the Harlem MAC store's Business Manager) suggested that Plaintiff post for the position, which at ELC is tantamount, for furloughed employees, to submitting an employment application for a position.  Plaintiff did so; but, inexplicably, she did not even receive an interview.

66.     Alston informed Plaintiff that Regional HR Manager Bigby had told him (*i.e.*, Alston) that Plaintiff could not be re-hired at the same rate she had been receiving before the January 2020 assault (even though, as Plaintiff understands it, she was still technically on furlough at the time, and so it would not actually have been a re-hiring).

67.     Upon hearing Alston's explanation, Plaintiff spoke with Bigby on November 17, 2020.  Undeterred by the position's reduced salary, Plaintiff told Bigby that she was still interested

in the position, and asked whether, at a later date, her pay might be increased to its previous level.

68.     Bigby said she would call Plaintiff back; in a telephone conversation shortly thereafter, Bigby informed Plaintiff that she was "not hirable" to a point-of sale position because of "other factors." When Plaintiff inquired what those factors were, Bigby responded, "time/attendance" and "productivity." Bigby's rationale for Plaintiff being "not hirable" is without any truth.

69.     As Plaintiff pointed out to Bigby on that call, there were no problems with her time, attendance, or productivity before the January 2020 assault. In fact, in fiscal year 2019, immediately preceding the attack upon her, Plaintiff had the highest sales performance of any employee at the Harlem MAC store – with the exception of the months of November and December 2019, when Plaintiff had served as Temporary Assistant Manager and was not on the floor selling product.

70.     Plaintiff was the only employee who had worked at the Harlem MAC store before the furlough who was neither re-hired nor offered a position.

71.     ELC discriminated against Plaintiff, because of her race and color, by not providing adequate security at the Harlem MAC store, where all of its employees were also Black or POC (with one exception), in contrast to ELC's treatment of stores staffed predominantly by white employees.

72.     But for ELC's race- and color-based disparate treatment, Plaintiff would not have suffered the severe psychological and physical conditions that required her to take an extended medical/disability leave of absence, and would have been reinstated to her job or promoted to a higher position with ELC.

73.     ELC also discriminated against Plaintiff because of her perceived or regarded-as

disability when it failed to reinstate her and terminated her employment because of her disability or its perception that, in the aftermath of the assault, she had a disability making her vulnerable to further psychological or physical injury.

## V.    PLAINTIFF'S RESULTING DAMAGES

74.    As a result of Defendants' unlawfully discriminatory and retaliatory actions, Plaintiff has suffered substantial damages.

75.    Plaintiff had worked continuously for ELC for a period of nine years prior to the assault and discrimination, and had planned to stay at ELC and/or MAC until her retirement.  Now, she does not know what the future has to hold financially for herself and her family.

76.    On top of the financial and professional damage inflicted by Defendants, Plaintiff has also incurred significant emotional and physical distress as a result of the unsafe working conditions, physical abuse, hostile work environment, and discrimination and retaliation she was subjected to.

77.    Throughout her tenure at the Harlem MAC store, Plaintiff was harassed, bullied, physically intimidated, and ultimately assaulted, which took a grave emotional and physical toll as she tried to work through it all and perform her job.  Even after her mistreatment, Plaintiff's discriminatory and retaliatory termination, and failure to be permitted to return to work, still came as an absolute shock, and have had serious repercussions on her emotional and physical well-being to this day.

78.    Furthermore, as Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendants.

79.    As a result of Defendants' wrongful actions, Plaintiff has suffered damages in an

amount to be proved at trial, but no less than $1,000,000.

## FIRST CAUSE OF ACTION FOR DISCRIMINATION AND HOSTILE WORK ENVIRONMENT UNDER TITLE VII
### (Against ELC and MAC)

80.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

81.    42 U.S.C. § 2000e-2(a) states, in pertinent part: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

82.    As described herein, Defendants discriminated against Plaintiff on the basis of her race and color in violation of Title VII by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a discriminatory and hostile work environment in that they failed to remedy the dangerous working conditions at the Harlem MAC store and subjected Plaintiff and the predominantly Black and, with one exception, entirely POC staff to dangerous working conditions.

83.    Defendants' discriminatory actions included, but were not limited to, their failure to take meaningful steps to address the repeated threats, harassment, and violence that Plaintiff endured at work.

84.    As a result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer pecuniary losses, as well as severe mental anguish and emotional and physical distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, PTSD, loss of self-esteem and self-confidence, and emotional

and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

85.    The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute, including an award of punitive damages.

## SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII
### (Against ELC and MAC)

86.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

87.    42 U.S.C. § 2000e-3(a) provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

88.    As described herein, Plaintiff engaged in protected activities, including but not limited to, making internal complaints regarding Defendants' discriminatory failure to protect their Black and POC Harlem staff from repeated harassment and violence and the resulting hostile work environment.

89.    As described herein, after Plaintiff engaged in activities protected by Title VII, Defendants took adverse actions against Plaintiff that would prevent a reasonable employee from making or supporting a similar complaint of discrimination.

90.    Following Plaintiff's complaints, Plaintiff was subjected to an increasingly worse discriminatory and hostile environment permeated with pervasive violence and trauma, eventually

leading to her termination, as described herein.

91.     As a result of Defendants' discriminatory and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, pecuniary losses, severe mental anguish and emotional and physical distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, PTSD, loss of self-esteem and self-confidence, and emotional and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

92.     Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute, including an award of punitive damages.

### THIRD CAUSE OF ACTION FOR DISCRIMINATION AND HOSTILE WORK ENVIRONMENT UNDER THE NYSHRL
**(Against ELC and MAC)**

93.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

94.     New York Executive Law § 296(1) provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

95.     As described herein, Defendants discriminated against Plaintiff on the basis of her

race, color, and disability in violation of the NYSHRL by fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a violent, discriminatory and hostile work environment. Defendants failed to provide Plaintiff with a safe working environment, treated her less favorably based on her race, color, and disability, and wrongfully terminated her employment and failed to reinstate her because of her race, color, and disability.

96.     As a result of the unlawful discriminatory conduct of Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, pecuniary losses and severe mental anguish and emotional and physical distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

97.     Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

### FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE NYSHRL
**(Against ELC and MAC)**

98.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

99.     New York Executive Law § 296(7) provides, in pertinent part: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

100.    As described herein, Plaintiff engaged in protected activities, including, but not

limited to, voicing and making internal complaints regarding discrimination and hostile work environment on the basis of her race, color, and disability.

101.    As described herein, after Plaintiff engaged in activities protected by the NYSHRL, Defendants took adverse employment actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

102.    As a result of Defendants' retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional and physical distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

103.    Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

### FIFTH CAUSE OF ACTION FOR DISCRIMINATION AND HOSTILE WORK ENVIRONMENT UNDER THE NYCHRL
**(Against ELC and MAC)**

104.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

105.    New York City Administrative Code § 8-107(1) provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person:

. . . (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment."

106.    As described herein, Defendants discriminated against Plaintiff on the basis of her race, color, and disability in violation of the NYCHRL by fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a violent, discriminatory and hostile work environment.  Defendants failed to provide Plaintiff with a safe working environment, treated her less favorably based on her race, color, and disability, and wrongfully terminated her employment and refused to reinstate her employment because of her race, color, and disability.

107.    As a result of the unlawful discriminatory conduct of Defendants in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, pecuniary losses and severe mental anguish and emotional and physical distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, PTSD, loss of self-esteem and self-confidence, and emotional and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

108.    Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SIXTH CAUSE OF ACTION FOR RETALIATION UNDER THE NYCHRL
### (Against ELC and MAC)

109.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

110.    New York City Administrative Code § 8 provides: "It shall be an unlawful

discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

111.   As described herein, Plaintiff engaged in protected activities, including, but not limited to, voicing and making internal complaints regarding discrimination and hostile work environment on the basis of her race, color, and disability.

112.   As described herein, after Plaintiff engaged in activities protected by the NYCHRL, Defendants took adverse employment actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

113.   As a result of Defendants' retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional and physical distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, PTSD, loss of self-esteem and self-confidence, and emotional and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

114.   Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE ADA
### (Against ELC and MAC)

115.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

116.   42 U.S.C. § 12112(a) provides: "No covered entity shall discriminate against a

qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

117.    As described herein, Defendants discriminated against Plaintiff because of her disability and/or perceived or regarded-as disability, when they failed to reinstate her and terminated her employment in the aftermath of the January 2020 assault since she had a disability and was also perceived as disabled making her vulnerable to further psychological and physical injury.

118.    As a result of Defendants' discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional and physical distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, PTSD, loss of self-esteem and self-confidence, and emotional and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

119.    Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## EIGHTH CAUSE OF ACTION FOR RETALIATION UNDER THE ADA
### (Against ELC and MAC)

120.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

121.    The Americans with Disability Act, 42 U.S.C. § 12203(a) and (b) provide, respectively: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."; and "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

122.    During Plaintiff's employment, Defendants were subject to the provisions of the ADA and Plaintiff qualified for disability leave.

123.    As described herein, Plaintiff engaged in protected activities under the ADA by exercising her right to take disability leave in order to seek treatment following the January 2020 attack by a customer.

124.    After Plaintiff exercised her ADA rights by taking medical/disability leave, Defendants took adverse action by not allowing her to return to work following furlough, terminating her employment, and later failing to rehire her or reinstate her employment, which would dissuade a reasonable employee from exercising similar protected rights in the future.

125.    As a result of Defendants' discriminatory and retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional and physical distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, PTSD, loss of self-esteem and self-confidence, and emotional and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

126.    Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to the maximum allowable damages

under this statute and an award of punitive damages.

## NINTH CAUSE OF ACTION FOR RETALIATION UNDER N.Y. LABOR LAW § 740
### (Against ELC and MAC)

127.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

128.    New York Labor Law § 740(2) provides, in pertinent part:  "An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety."

129.    As described herein, Plaintiff engaged in protected activities under New York Labor Law § 740, including but not limited to, raising concerns and making internal complaints and filing police reports regarding Defendants' unlawful failure to protect their Black and POC employees from repeated violence and failure and non-compliance with obligations to provide safe working conditions, including under applicable Occupational Safety and Health Administration regulations.  Plaintiff also escalated these dangerous work conditions to ELC's SVP of Security, in an effort to address the hazardous illegal work environment.

130.    After Plaintiff engaged in activities protected by New York Labor Law § 740, Defendants took adverse employment actions against Plaintiff, including failure to reinstate her and termination, which would dissuade a reasonable employee from engaging in similar protected activities.

131.    As a result of Defendants' retaliatory conduct, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional and physical distress, including,

but not limited to depression, humiliation, embarrassment, stress and anxiety, PTSD, loss of self-esteem and self-confidence, and emotional and physical pain and suffering, for which she is entitled to an award of compensatory damages, as well as back pay, front pay, lost benefits, interest, reasonable attorneys' fees and costs, and other relief.

132.    Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of New York Labor Law § 740, for which Plaintiff is entitled to an award of punitive damages under this statute.

133.    Defendants are further subject to civil penalties for their violation herein.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Rahsheeda Covington respectfully requests a judgment against Defendants The Estée Lauder Companies Inc. and M.A.C. Cosmetics Inc., as follows:

a) finding that Defendants discriminated and retaliated against Plaintiff in violation of Title VII, the NYSHRL, the NYCHRL, the ADA, and New York's Whistleblower Law;

b) awarding Plaintiff actual damages and remedies, including back pay, front pay, lost wages, and all other benefits to which Plaintiff is entitled under applicable law, in an amount to be determined at trial;

c) awarding Plaintiff compensatory damages to which Plaintiff is entitled under applicable law, including for mental and physical pain and suffering, in an amount to be determined at trial;

d) awarding Plaintiff liquidated damages under applicable law, in an amount to be determined at trial;

e) awarding Plaintiff punitive damages under applicable law, in an amount to be determined at trial;

f) awarding Plaintiff the costs of this action, together with reasonable attorneys' fees as provided under applicable law, in an amount to be determined at trial;

g) awarding Plaintiff pre-judgment and post-judgment interest as provided by law; and

h) awarding Plaintiff such other and further relief as this Court deems necessary and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: New York, New York
       October 31, 2024

REAVIS PAGE JUMP LLP

By: _____
       Helen Diana (Heidi) Reavis
       John A. Beranbaum
       Gregory P. Feit
       Joanita N. Gakami
41 Madison Avenue, 41st Floor
New York, New York 10010
Tel.: (212) 763-4100
hreavis@rpjlaw.com
jberanbaum@rpjlaw.com
gfeit@rpjlaw.com
jgakami@rpjlaw.com

*Attorneys for Plaintiff Rahsheeda Covington*